Missouri-Lincoln Trust Company v. Commissioner.
Missouri-Lincoln Trust Co. v. Commissioner
Docket No. 109172.
United States Tax Court
1943 Tax Ct. Memo LEXIS 210; 2 T.C.M. (CCH) 427; T.C.M. (RIA) 43397; July 5, 1943
*210 Under the facts, held, that petitioner is not shown to be entitled to depletion for the taxable years under section 114 (b) (1) of the Revenue Act of 1938; but is entitled to depletion under section 114 (b) (3) of that Act as determined by respondent. Held, further, that oil royalties received by the petitioner in the taxable years are to be included in petitioner's gross income for those years with proper deductions therefrom of depletion by way of return of capital rather than by applying the full amounts so received as a return of capital. Claude W. Dudley, Esq., for the petitioner. Carroll Walker, Esq., for the respondent. TYSON Memorandum Findings of Fact and Opinion The respondent determined income tax deficiencies against the petitioner for the calendar years 1938 and 1939 in the respective amounts of $1,568.65 and $1,048.67. The first issue raised by the pleadings is whether or not the respondent erred in refusing to allow deduction for depletion on an oil royalty in amounts of $15,358.69 and $14,286.26 for the years 1938 and 1939, respectively. The second issue raised at the hearing by an amendment to the pleadings is whether or not the oil royalties received *211 by the petitioner during the taxable years constituted a return of capital so that the petitioner would have received no reportable gross income from the royalties during the taxable years. The proceeding has been submitted upon the pleadings, a stipulation of facts, and oral and documentary evidence. Stipulated facts not set forth herein are included by reference except certain facts hereinafter mentioned in our opinion. Findings of Fact The petitioner is a corporation organized under the laws of the State of Missouri and has its principal office in St. Louis, Missouri. The return for the period here involved was filed with the collector of internal revenue for the first district of Missouri. Prior to 1907 the petitioner was engaged in the business of operating a bank and trust company. It ceased its banking operations in 1907 and has been in practical liquidation since that time. The petitioner keeps its books and files its income tax returns on the cash receipts and disbursement basis. Many years ago and prior to 1929 the petitioner acquired approximately 13,758 acres of land in Wharton County, Texas, at a cost of $362,375.38. In 1929 the petitioner caused the Wharton Development *212 Company, a Texas corporation, hereinafter referred to as Wharton, to be organized, and transferred in a non-taxable transaction all of this land to that company in exchange for all of its capital stock; the land thereupon becoming the only asset of Wharton. The petitioner continued to own all the stock of Wharton until January 1934 when it sold that stock to Horton C. Cockburn upon payment of a cash consideration of $109,876.66. On December 22, 1933, prior to the transfer of the stock of Wharton by petitioner to Cockburn, the one-sixteenth royalty interest here involved, in all the oil, gas, and other minerals if and when produced and saved from the lands was conveyed by Wharton to M. D. Ball, as nominee for the petitioner. Since that time Ball has held legal title to the royalty interest in trust for the petitioner, the petitioner being the beneficial owner of that interest. The petitioner's share of oil produced and saved from this land amounted to 4,964.69, 17,289.98, and 16,082.70 barrels for the calendar years 1937, 1938, and 1939, respectively. The petitioner collected no royalties from its interest acquired from Wharton Development Company until 1937, when it received $5,347.51 *213 from this interest. On brief petitioner concedes that it collected royalties on its interest in the amount of $18,302.70 in the taxable year 1938 and $15,114.19 in the taxable year 1939 and that it did not report those royalties in its gross income for those respective years. The respondent has included in the income of the petitioner for the year 1938 oil royalties amounting to $18,302.70 less a depletion allowance of 27 1/2 per cent, or $5,033.24, and for the year 1939 oil royalties amounting to $15,114.19, less depletion of 27 1/2 per cent, or $4,156.40. Opinion TYSON, Judge: The first issue involves the extent to which the petitioner may deduct depletion from oil royalties received by it in the taxable years 1938 and 1939. Section 23 (m) of the Revenue Act of 1938 provides for a reasonable allowance for depletion. Section 114 (b) (3) provides that the allowance for depletion in the case of oil wells under section 23 (m) shall be 27 1/2 per centum of the gross income from the property during the taxable year, but that the allowance should not be less than it would be if computed without reference to section 114 (b) (3). Section 114 (b) (1) provides that the basis upon which *214 depletion is to be allowed shall be the adjusted basis provided in section 113 (b). Thus, if the depletion computed under section 114 (b) (1) is greater than the percentage depletion computed under section 114 (b) (3), the petitioner is entitled to the greater amount. The respondent determined that the petitioner was entitled to a depletion allowance of 27 1/2 per centum of the oil royalties received during the taxable years. The petitioner's primary contention under this issue is that if the oil royalties are returnable as gross income depletion thereon should be computed on the basis of that part of the original cost to it of the oil land allocable to the one-sixteenth oil royalty under the method adopted in , affirming . We do not think the cited case or the method used to ascertain the cost basis involved therein is applicable here. There, the taxpayer corporation owned certain leases acquired in exchange for part of its capital stock. It sold those leases, with the exception of a certain reserved fractional interest in the oil and gas, for an amount *215 in excess of the cost to it of the leases. The question presented was what gain was realized upon that portion of the leases which was sold, and necessarily incident, of course, to the solution of that question was the ascertainment of the cost of that portion to the taxpayer. In ascertaining this cost the Board, as an equitable apportionment, allocated the cost of the leases as a whole between the interests sold and those retained in the proportions which the respective fair market values of the interests sold and those retained by the taxpayer bore to the fair market value of that whole; that is, a certain per cent of the cost of the whole as cost of the interest sold and a certain per cent of the cost of the whole as cost of the interest retained. Here, in order to ascertain the cost to petitioner of the one-sixteenth royalty interest involved, there is nothing to apportion or allocate because, even assuming, but not so deciding, that the market value of the royalty interest and the remaining interest in the land are separately shown, the cost, or any other possible basis, of the one-sixteenth royalty interest is not included in, or commingled with the original cost of the land *216 or of the stock in Wharton. The cost of that royalty interest, or any other possible basis, stood alone, separate, and apart from the cost of anything else. Prior to the conveyance by petitioner to Cockburn of the stock in Wharton, Wharton had conveyed to petitioner the one-sixteenth royalty interest here involved, and nothing else, and Cockburn never owned that royalty interest. This was the only conveyance of the one-sixtieth royalty interest here involved, and it is under that conveyance alone that petitioner is the owner of that interest, for notwithstanding the stipulation of facts states, inter alia, that the stock was sold to Cockburn by petitioner for a cash consideration of $109,876.66 "and a further consideration of a one-sixteenth perpetual interest in oil and gas * * *", we have not found that to be a fact, for the reason that the record clearly and conclusively shows the facts to be as above stated with reference to the conveyance of the royalty interest in question to petitioner and Cockburn could not have transferred such interest. Cf. . Both parties have treated this as being the only *217 royalty interest ever conveyed to petitioner. What consideration, if any, passed from petitioner to Wharton for the royalty interest is not shown by the record. The transfer to petitioner of that interest might, so far as we know, have been through a sale, exchange, or a corporate distribution. Since we are unable to determine the character of the transfer we are also unable to determine any basis for the royalty interest involved under section 114 (b) (1), supra, and consequently sustain the respondent's determination and his application therein of the 27 1/2 per cent as allowable depletion, thus deciding the first issue against the petitioner. In view of our holding on the first issue it is unnecessary to consider the further contention of petitioner which relates only to the fair market value of the royalty interest as of January 1934 being considered as the basis of that interest in computing depletion. The second issue is whether or not the oil royalties received during the taxable years by petitioner constituted a return of capital to which petitioner would be entitled so that those royalties would not be includable in its gross income. Petitioner owned a one-sixteenth *218 royalty interest in all the oil and gas if and when produced and saved from the lands owned by Wharton. That royalty interest constituted an economic interest in the oil in place, and petitioner must look to depletion for the recovery of its cost, if any, or other basis, if any, and may not receive recoupment thereof, as a return of capital, out of production before reporting any of the proceeds as gross income. , affirming , and authorities cited in both the Board and Circuit Court opinions; ; ; ;; and . The petitioner contends that under the theory of , no part of the royalties received by it should be reported in gross income until *219 it has fully recovered the cost of that royalty. This contention is unsound. In the first place, as shown in our discussion of the first issue, the cost, if any, or other basis, if any, of the royalty interest here involved is not shown so we could not say that the total of the amounts received by petitioner as royalties, which are shown, is less than the cost, if any, or other basis, if any, of the royalty interest; and by the some token we could not say that such cost, if any, or other basis, if any, had not been returned to petitioner prior to the taxable years. But even if the cost of, or another basis for the royalty interest, was shown, the principle of the Logan case would not apply if for no other reason than that stated in , in distinguishing the Logan case, as follows: , announces the abstract rule that "In order to determine whether there has been gain or loss, and the amount of the gain, if any, we must withdraw from the gross proceeds an amount sufficient to restore the capital value that existed at the commencement of the period *220 under consideration." But it is significant to note that the court also said: "We are not dealing with royalties or deductions from gross income because of depletion of mining property." The above quoted distinction is applicable to the instant case, since here we are "dealing with royalties or deductions from gross income because of depletion" which the court in the Logan case stated, in effect, was not embraced within the scope of the principle established in that case which dealt only with a sale and its resultant effects. The second issue is also decided against the petitioner. Decision will be entered under Rule 50.